IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.:  6:12-CV-1320-ORL-37-TBS

LIBERTY LIFE ASSURANCE
COMPANY OF BOSTON,

                                                            DISPOSITIVE MOTION

      Plaintiff,

vs.

CARLOS DEVILLALAVILLA,

      Defendant.

_____/

## LIBERTY LIFE ASSURANCE COMPANY OF BOSTON'S MOTION FOR JUDGMENT ON THE RECORD OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT  AND INCORPORATED MEMORANDUM OF LAW

COMES NOW**,** Liberty Life Assurance Company of Boston ("Liberty Life"), by and through its undersigned counsel, pursuant to Fed. R. Civ. P. 52, hereby moves this Court for entry of a Judgment on the Record, in its favor, and against Defendant, Carlos DeVillalvilla.  In the alternative, Liberty Life requests entry of a summary final judgment in its favor under Fed. R. Civ. P. 56.  In support of its motion, Liberty Life states as follows:

I.     **PREFACE:**

Citation to the Declaration of Paula McGee shall be referenced as *McGee, *¶ #, where the "#" signifies the paragraph number.  Citation to the Bates Stamped documents authenticated by the sworn statement of Paula McGee shall be referenced as LL ###, where "###" signifies the Bates Stamped number in the lower right-hand portion of the document.

II.      **JURISDICTION AND AUTHORITY OF THE COURT:**

Liberty Life seeks to recover long term disability benefits that were overpaid to Defendant under an employee welfare benefit plan ("the Plan") established and sponsored by Defendant's employer, Charles Schwab & Co., Inc. ("the Sponsor"). The Sponsor maintained the Plan for the benefit of its participating employees and their dependents. *McGee*, ¶ 4. The Plan is governed by the provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* ("ERISA"). *McGee*, ¶ 5. Liberty Life insured benefits under the Plan, pursuant to a Group Disability Income Policy ("the Policy"), which Liberty Life issued to the Sponsor. *McGee*, ¶ 6; LL 0001 through LL 0036. Liberty Life also served as a claims administrator for the Plan, and exercised discretionary authority to interpret terms of the Plan. LL 0028.

This action arises under the provisions of ERISA, in particular, 29 U.S.C. § 1132, and this Court has original jurisdiction pursuant to 28 U.S.C. § 1331. Venue lies in this Court pursuant to, *inter alia*, 28 U.S.C. § 1391 and 29 U.S.C. § 1132(e)(2).

III.     **STATEMENT OF UNDISPUTED FACTS:**

A.       **The Defendant's Coverage Under the Plan**

The Sponsor maintains the Plan for its eligible employees. *McGee*, ¶ 4. The Plan is governed by ERISA. *McGee*, ¶ 5. Liberty Life insured the Plan for the Sponsor, pursuant to the Policy, which is a Plan governing document. *McGee*, ¶ 6. Pursuant to the terms of the Policy and the Plan, Liberty Life had discretionary authority to make interpretations and to determine eligibility for benefits relative to the Plan. LL 0028.

Defendant was hired by the Sponsor on or about April 10, 2000.  During his time of employment with the Sponsor, Defendant was a participant in the Plan.  *McGee*, ¶ 9.  Pursuant to the terms of the Plan, a participant's benefits are calculated in the following manner:

1.  Multiply the Covered Person's Basic Monthly Earnings by the Benefit Percentage shown in the Schedule of Benefits

2.  Take the lesser of :

    a.  the amount figured in step (1) above; or

    b.  the Maximum Monthly Benefit shown in the Schedule of Benefits; and then

3.  Deduct Benefits from Other Income, (shown in the Benefits from Other Income provision of this coverage), from this amount.

LL 0013.  The Plan defines "Benefits from Other Income" as including:

> The amount of Disability and/or Retirement Benefits under the United States Social Security Act, the Canada Pension Plan, the Quebec Pension Plan, or any similar plan or act for which. . .the Covered Person receives or is eligible for [sic].

LL 0019.  Thus, a participant may receive benefits in the amount of a percentage of his or her income, less benefits received under the Social Security Act.

The Plan contemplates the scenario where a participant receives benefits under the Plan, then subsequently receives an award of retroactive Social Security Disability benefits.  Specifically, it provides that "If a benefit overpayment on any claim occurs, it will be required that reimbursement be made to Liberty within 60 days of such overpayment, *or* Liberty has the right to reduce future benefit payments  until such reimbursement is received."  LL 0031 [emphasis added].  The Plan further provides that "Benefits from Other Income which are paid in a lump sum will be prorated on a monthly basis over the time period for which the sum is given or the Maximum Benefit Period, whichever is less."  LL 0020.

## B.    The Defendant's Claim

Defendant's last day of work for the Sponsor was November 9, 2007, after which Defendant made a claim under the Plan for disability benefits. *McGee*, ¶ 10.   Liberty Life, as claims administrator for the Plan, approved Defendant's claim for benefits, and paid benefits to Defendant commencing on May 10, 2008.[1]  *McGee*, ¶ 11.   Liberty Life notified Defendant of the approval of his benefits by letter of May 6, 2008.  LL 0772.  In that very first letter approving benefits, Liberty Life informed Defendant:

> Your LTD Policy provides benefits at 66% of your pre-disability earnings less benefits from other income.  These include, but are not limited to, benefits under the United States Social Security Act, the Public Employees' Retirement Fund, and Workers' Compensation benefits.
>
>                   *         *         *
>
> If your benefit is overpaid, Liberty Life has the right to recover the amount overpaid in full.  To avoid an overpayment, please notify our office immediately if you return to work or begin receiving "other income bnefits" as indicated in your policy.
>
> In addition, please complete the enclosed Family Questionnaire, Social Security Consent to Release Information, Social Security Reimbursement Agreement and return to our office by June 3, 2008.

LL 0772.

On May 7, 2008, a Liberty Life representative, Janelle Paine, spoke with Defendant on the phone to explain the letter of May 6 and the forms attached thereto, including the Social Security Reimbursement Agreement ("the SSRA").  LL 0067.  On June 24, Ms. Paine spoke with Defendant's wife and explained Social Security Disability ("SSD") benefits, as well as the potential for overpayments and offsets arising therefrom.  *Id.*  They discussed that Defendant was going to hold off on claiming SSDI benefits, as it was possible that he might return to work soon.

---

[1]        Pursuant to the terms of the Plan, a participant must remain disabled throughout the entire 180 elimination period before he or she is entitled to receive benefits.

In late July, 2008, Liberty Life received the fully completed and executed forms it had sent to Defendant, including the SSRA.  LL 0066.  The SSRA had been signed by Defendant and dated July 10, 2008.  LL 0767.  The SSRA expressly provided as follows:

> If Social Security awards benefits to me, I agree that Liberty Life has a first lien on all such benefits to the extent of any overpayment or debt, and I agree to hold all such Social Security benefits in a trust for the benefit of Liberty Life until the amount of Liberty Life's overpayment has been repaid in full.

From May 10, 2008 through September 15, 2010, Liberty Life paid Defendant the full gross benefit amount of  $2,045.49, without any deductions.  *McGee*, ¶ 12.  On September 15, 2010, Liberty Life notified Defendant that he no longer qualified for benefits under the Plan, because his medical condition did not continue to render him "Disabled" as that term is defined by the Plan.  LL 0121 – LL 0125.  The notice of termination of benefits informed Defendant of his right to an administrative appeal, under the terms of the Plan and ERISA, but Defendant did not exercise this right.[2]  LL 0124.

## C.       The Overpayment

On March 14, 2011, after Defendant's benefits claim had been terminated and all opportunity for appeal had expired, the Social Security Administrative issued a Notice of Award to Defendant, stating that it had granted him SSD benefits based on a disability that commenced on November 9, 2007.   LL 0096. The Award Notice indicated that Defendant's initial SSD

---

[2]       While Defendant has argued that Liberty Life wrongfully terminated benefits, Defendant's failure to exercise his right to appeal the decision constitutes a failure to exhaust administrative remedies, which bars him from now challenging the termination in Court.  *See Counts v. American General Life & Accid. Ins. Co.*, 111 F.3d 105 (11th Cir. 1997)(holding that participant must exhaust administrative remedies before suing for benefits). Moreover, even if Liberty Life wrongfully terminated benefits, that would form the basis of a compulsory counterclaim (which is now barred by Defendant's failure to bring it and by failure to exhaust administrative remedies) rather than an affirmative defense to Liberty Life's claims for recovery of overpaid benefits.

benefit, which commenced in May 2008, was $1,410 per month.[3]  LL 0102.  The Notice also

awarded back benefits in the amount of $44,739.00, for the period of May 2008 through

February 2011, which Defendant actually received from the Social Security Administration.  LL

0096 & 0099.

Defendant's receipt of SSD benefits created an overpayment of benefits he had received

under the Plan.  This is because the Plan expressly provides that benefits are to be calculated as

follows:

> 1.   Multiply the Covered Person's Basic Monthly Earnings by the Benefit
>      Percentage shown in the Schedule of Benefits
>
> 2.   Take the lesser of :
>
>    a.   the amount figured in step (1) above; or
>
>    b.   the Maximum Monthly Benefit shown in the Schedule of Benefits;
>         and then
>
> 3.   Deduct Benefits from Other Income, (shown in the Benefits from Other
>      Income provision of this coverage), from this amount.

LL 0013.   Step 1 of this process yielded the $2,045.49 which Liberty Life paid to Defendant

each month from May 2008 through September 2010.  However, once Defendant received an

award of SSD benefits, Step 3 of the process required that they be deducted from the $2,045.49

benefit amount.

On March 21, 2011, Liberty Life received notice of the SSD award to Defendant.  LL

0038.  Liberty Life reviewed the SSD award and calculated the overpayment as being

---

[3]      Although the Notice of Award references $1,410.70 per month, SSD benefits are rounded down to the nearest dollar when paid by the Social Security Administration.

$34,462.00.[4]  LL 0091.  On March 30, 2011, Kasey Cook, a Recovery Specialist for Liberty Life

wrote a letter to Defendant explaining the calculation of the overpayment, providing a

spreadsheet showing the method of calculation, and requesting reimbursement of $34,462.00.

LL 0089-0091.  Defendant's wife subsequently requested a copy of the Plan documents showing

Liberty Life's right of reimbursement, so Mr. Cook provided Defendant's representative with a

copy of the SSRA on April 5, 2011 and mailed a copy of the Policy to Defendant on April 13,

2011.  LL 0038, 0083, 0084 & 0088.

On May 12, 2011, Mr. Cook sent a follow-up letter to Defendant demanding

reimbursement of the overpayment.  LL 0078.[5]   In response, Defendant sent a letter to Liberty

Life dated May 19, 2011, which stated:

> The reason I have not sent you payment is due to the fact that I believe I was
> misled and my case mishandled by your company.  I complied with all of your
> requests for keeping information current.  I continually updated my files
> throughout the period of time I was being paid by Liberty.  My wife and I were
> told on multiple occasions by my case worker (Janelle Paine) that in late 2009 my
> file was being forwarded for permanent status review.  Early in 2010 she
> informed us that I had been given permanent disability status and that "Liberty
> will continue to pay you on a permanent basis even if your case with Social
> Security is denied" because we were told the decision by Liberty Life was made
> outside of any decision from Social Security.
>
> Then in June 2010 we were informed that my disability status was once again
> under review and I had new forms to fill out and complete.  We specifically
> questioned the "Social Security Reimbursement Agreement" and we were told
> that this form  was only for funds paid after Liberty Life had classified me as
> permanently disabled, and would not pertain to payments made earlier than the
> date I signed the form.  I signed the form with this understanding in July 2010.

---

[4]      The amount of overpaid benefits was calculated as $39,762.00.  However, Liberty Life credited Defendant
with $5,300 which were withheld by the SSA to pay Defendant's counsel, leaving a net overpayment to Defendant
in the amount of $34,462.00.  LL 0091 & 0099.

[5]      In that letter, Liberty Life erroneously stated that the amount of the overpayment was $35,762, rather than
$34,462.00.  LL 0078.  Liberty Life would later admit its error and confirm that the overpayment amount was
$34,462.00.  LL 0073.

In September I was told that I was no longer considered disabled by Liberty, since according to their medical expert I was able to sit at a desk job for eight hours a day (an opinion not shared by any of my doctors, nor by Social Security itself).  I was never classified as permanently disabled by Liberty so this form seems to be invalid.  As this form now seems to be the grounds  upon which the amount  being requested by Liberty is based on [sic] I don't see the validity of this request for any funds issued  before August 2010.

Calculating the amount that Liberty paid me  after this form was signed, to say that the form covered any payments post signature, not just when I was classified as permanently disabled, it would include the full month of August and the partial payment for September 2010.  This amount totals $1,801.50.  In either case, the amount is nowhere near the figure given to us by Liberty.

Although I don't feel I owe any funds whatsoever to Liberty, as a good faith gesture I am willing to give Liberty the amount stated above and a cashier's check for that amount is hereby enclosed.  My wife and I consider this matter closed and will interpret Liberty's deposit of this check as agreement that this is the proper amount owed by us to Liberty.

Should you choose to dispute our conclusions, we are willing to conduct reasonable negotiations.  Failure to return the enclosed check to us by June 1, 2011 and request further negotiations also is viewed as acceptance of the offer herein and closure of this matter.  However, do be advised that we will seek legal advice and representation as we feel that we need to have our rights protected and will pursue whatever action is necessary vigorously [sic] to ensure that we do not pay more than is fairly owed.

LL 0076-0077.  To summarize Defendant's reasons for disputing his debt:

- Defendant was not paying back the SSD overpayment because he felt Liberty Life mishandled his claim (though he never requested an administrative appeal of any decision)

- Defendant asserts that Liberty Life's personnel told him in early 2010 that he would receive Plan benefits indefinitely (though there is no documentation of any such representations)

- Defendant asserts that Liberty Life didn't request the SSRA until June 2010 (though it is documented that Liberty Life sent Defendant the SSRA on May 6, 2008, when benefits were first approved.).

- Defendant asserts that he didn't sign the SSRA until July 2010, so he is only responsible for repaying overpayments after that date (though the SSRA was actually signed on July 10, *2008*, after only two months of benefits had been paid, and the Plan language on reimbursement pre-existed Defendant's claim).

Defendant mailed his letter, along with a check for $1,801.50, to Liberty Life.  Liberty Life's mail room received the letter and check, and before the letter was forwarded to Mr. Cook, who was knowledgeable about Defendant's case, a clerical employee processed the check.  *McGee*, ¶¶ 21-26.

On May 24, 2011, Mr. Cook received the correspondence of May 19, 2011.  The next day, he wrote a letter to Defendant acknowledging receipt of the letter and check.  LL 0073.  Mr. Cook confirmed the proper amount of the overpayment as being $34,462.00, and stated that the $1,801.50 was being applied to the debt.  *Id.*  Mr. Cook cited the pertinent Plan language which entitled Liberty Life to recover the full overpayment, and requested that Defendant contact him to set up a payment plan for the remaining $32,660.50 balance.  LL 0073.

On June 9, 2011, Defendant responded to Mr. Cook in writing, stating that he considered Liberty Life's negotiation of the $1,801.50 check as full satisfaction of any obligation he had, and that further attempts to collect the overpayment would result in his suing Liberty Life.  LL 0072.

On August 29, 2012, Liberty Life filed the instant action seeking reimbursement of the overpayment balance, along with costs, fees and interest.  Doc. 1.

IV.     **ANALYSIS, ARGUMENTS, AND AUTHORITIES:**

     A.     Standards of Review:

          1.     Standard of Review for Judgment on Record under Rule 52:

In cases involving ERISA benefits, the district court is serving more as an appellate tribunal reviewing an administrative decision than as a trial court, and the usual rules of summary judgment do not apply. *Curran v. Abbott Laboratories Extended Disability Plan*, 2005

WL 894840 at *8 (11th Cir. March 16, 2005); *Crume v. Metropolitan Life Insurance Co.*, 417

F.Supp.2d 11258, 1272 (M.D. Fla. 2006).   In such cases, the remedies sought are equitable, so

there is no Seventh Amendment right to a jury trial.   *Blake v. Unionmutual Stock Life Ins. Co. of*

*America*, 906 F.2d 1525, 1526-27 (11th Cir. 1990).   As such, the Court is the trier of fact and

law, so it is appropriate to consider motions for judgment on the record.   *See e.g. Smorto v. 3DI*

*Techs., Inc.*, 393 F. Supp. 2d 1304 (M.D. Fla. 2005) (Presnell, J.); *Providence v. Hartford Life*

*and Accident Ins. Co.*, 357 F. Supp. 2d 1341 (M.D. Fla. 2005) (Whittemore, J. ); *Stenner-Muzyka*

*v. Unum Life Ins. Co. of Am.*, No. 8:04-cv- 984-T-17TBM, 2005 WL 1610708  (M.D. Fla. 2005)

(Kovachevich, J.); *Featherston v. Metropolitan Life Insurance Company*, 389 F. Supp. 2d 1302

(N.D. Fla. 2005) (Vinson,J.)

Rule 52(a) requires the court, in all actions tried upon the facts without a jury, to "find the

facts specially."  The court must state findings sufficient to indicate the factual basis for its

ultimate conclusion. *Kelley v. Everglades Drainage District,* 319 U.S. 415, 422, 63 S.Ct. 1141,

1145, 87 L.Ed. 1485 (1943).  The findings must be "explicit enough to give the appellate court a

clear understanding of the basis of the trial court's decision, and to enable it to determine the

ground on which the trial court reached its decision." *United States v. Alpine Land & Reservoir*

*Co.,* 697 F.2d 851, 856 (9th Cir.), *cert. denied,* 464 U.S. 863, 104 S.Ct. 193, 78 L.Ed.2d 170

(1983).

2.   <u>Standard of Review for Summary Judgment under Rule 56</u>:

The Court, in reviewing a motion for summary judgment, is to be guided by the standard

set forth by Federal Rule of Civil Procedure 56(c), which states in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions,
> answers to interrogatories and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the
moving party is entitled to judgment as a matter of law. [6]

The moving party bears the initial responsibility of informing the court of the basis for its

motion, and identifying those portions of the record, together with the affidavits, if any, which it

believes demonstrates the absence of a genuine issue of material fact.  *U.S. v. Four Parcels of*

*Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S.

317, 23 (1986)).  Despite presumptions in favor of the non-moving party, the purpose of Rule 56

is to eliminate the needless delay and expense to the parties and to the court occasioned by an

unnecessary trial.  *Celotex*, 477 U.S. at 322-23.  Consequently, the non-moving party cannot

merely rest upon bare assertions, conclusory allegations, surmises or conjectures.  *Id.*  Rather, the

mere existence of a scintilla of evidence in support of the non-movant's position is insufficient,

and there must be evidence on which the trier of fact could reasonably find for the non-movant.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Avirgan v. Hull*, 932 F.2d 1572 (11th

Cir. 1991).

   B.   Arguments In Support of Judgment For Liberty Life:

      i.   *As to All Counts*

The civil enforcement provision of ERISA, provides:

"A civil action may be brought by a participant, beneficiary, or fiduciary (A) to
enjoin any act or practice which violates any provision of this subchapter or the
terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress
such violations or (ii) to enforce any provisions of this subchapter or the terms of
the plan;

29 U.S.C. §1132(a)(3).  Thus, a plan fiduciary has the right to obtain equitable relief to redress

violations of the Plan and to enforce its terms.  A "fiduciary" is defined by ERISA as someone

---

[6]      Rule 56 references that the Court may rely on affidavits in the record.  However, wherever a rule of civil
procedure requires or permits facts to be proved by an affidavit, they may similarly be proved by an unsworn
declaration made under penalty of perjury.  28 U.S.C. §1746.

who "exercises discretionary authority or discretionary control over the plan or the disposition of plan assets." 29 U.S.C. §1002(21).

Liberty Life is a fiduciary of the Plan because it is vested with discretionary authority to interpret the Plan documents and to make benefits determinations. Specifically, the Policy provides:

> Liberty shall possess the authority in its sole discretion to construe the terms of this policy and to determine benefit eligibility hereunder. Liberty's decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding.

LL 0028. Where Liberty Life calculated and paid benefits to Defendant, it was acting in a fiduciary capacity relative to the Plan. *See Aetna Health, Inc. v. Davila*, 124 S.Ct. 2488, 2502 (2004)("[T]he ultimate decisionmaker in a plan regarding an award of benefits must be a fiduciary and must be acting as a fiduciary when determining a participant's or beneficiary's claim."). This, Liberty Life has standing to bring a claim for equitable relief under §1132.

The term "equitable relief" in §1132 means "those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." *Mertens v. Hewitt Assocs.,* 113 S.Ct. 2063 (1993). Liberty Life has couched its claim in several counts, all of which are founded in theories of equity. Ultimately, the question is whether Liberty Life may recover overpaid benefits as "equitable relief," where the Plan expressly provides that it has the right to do so. This question is not a novel one, and the Circuit Courts of Appeals and the Supreme Court have answered it in the affirmative.

The odyssey began with the Supreme Court's opinion in *Great-West Life & Annuity Insurance Co. v. Knudson,* 534 U.S. 204 (2002). In that case, the Knudsons recovered funds in a law suit, which included payment for medical bills incurred. The Knudsons' health insurer, Great West, sought to recover the funds it had paid toward medical treatment, pursuant to a

recovery provision in the plan.  The case made its way through the lower courts, ultimately

ending up before the U.S. Supreme Court, which held that the plan could not recover the

proceeds of the litigation, which had been placed into a "Special Needs Trust" under California

law, because the Knudson's were not in possession of the funds.  The Court reasoned that the

plan's monetary claim against the Knudsons would effectively operate as "the imposition of

personal liability for the benefits that [the plan] conferred upon [the beneficiaries]," which was a

legal rather than an equitable claim. In that case, the plan administrator could not use the

overpayment provision to recover the proceeds from the plan beneficiaries' tort suit against a

third party because the claim was a legal claim rather than an equitable claim.  *Id.*  The Court

was careful to state, however, that "there may have been other means" for Great West to obtain

the recovery of overpayments.  *Id.* at 220.

The *Knudson* decision caused plans to stop bringing actions for damages, and to start

bringing actions for "constructive trust" and "restitution" from the constructive trust.  Thus,

when the Supreme Court considered the case of *Sereboff v. Mid Atlantic Medical Services, Inc.*

in 2006, the outcome was very different.

In *Sereboff,* the Sereboffs were injured in car accident, and their health insurer, Mid

Atlantic, paid medical bills under an ERISA governed plan.  The plan contained a subrogation

provision that allowed Mid Atlantic to recoup its payments if the Sereboffs made a tort recovery,

and the Sereboffs expressly agreed to set aside funds from any tort settlement in order to repay

Mid Atlantic.  When the Sereboffs settled their tort claim, they put the funds into their

investment account, and the Plan (through Mid Atlantic) asserted a claim to the funds.  *Sereboff*

*v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356 (2006).

After the case made its way through the lower courts, the Supreme Court held that Mid Atlantic's action was properly framed as a claim for "equitable restitution" because it sought to recover "specifically identifiable funds that were within the possession and control of the Sereboffs." *Id.* at 362-363.  The Court further stated there was an equitable lien on the funds by agreement of the parties, so there was no need to "trace the asset into its products or substitutes, or trace [the] money or property to some particular funds or assets" in order for the plan to recover the stake held by the Sereboffs.  *Id.* at 364 *citing* Dobbs, Law of Remedies §4.3(2), pp. 591, n. 10, 592 (2d ed. 1993).  Rather, the Court relied on its historic opinion in *Barnes v. Alexander*, 232 U.S. 117 (1914) to distinguish equitable liens sought as a matter of restitution (which require tracing) from equitable liens created "by agreement" (which do not require tracing).  *Id.* at 364-365.

This case established that a plan could recover overpaid funds if the plan participant had the funds in his possession, and that the plan need not trace the *exact* funds to recover the money from the beneficiary.  The key distinction between *Sereboff* and *Knudson* is that the Knudson's never came into physical possession of the overpaid funds.  The funds were paid to a Health Trust and to their attorney, without coming into the participants' hands.  Thus, the claim against the Knudsons was against their general assets, not for funds that ever came into their possession.  In *Sereboff*, even though the plan didn't have to show the specific funds were still in the beneficiary's possession, they did show that the funds were initially paid to the beneficiary, so an equitable lien or constructive trust was created in favor of the plan.

Two months after the publication of the *Sereboff* opinion, the Eight Circuit was faced with an issue similar to the one in the instant case.  In *Dillard's, Inc. v. Liberty Life Assurance Company of Boston*, 456 F.3d 894 (2006), Liberty Life sought to recover overpaid disability

benefits.  The overpayment in *Dillard's* was also generated by the retroactive award of SSD

benefits, and the participant in that case had also contested whether Liberty Life could recover

the overpayment.  *Id*. at 898-899.  The Eighth Circuit referenced the *Sereboff* case, and noted that

the Supreme Court treated the recovery claim as an action to enforce an equitable lien

established by agreement.  *Id.* at 899.  The Eighth Circuit went on to say that "[c]entral to its

holding was the Supreme Court's  determination that the third-party reimbursement provision

'specifically identified a particular fund.. . .'" against which the plan had a claim.  *Id.* at 901.

The court then analogized its own case to the *Sereboff* case, stating that Liberty Life's claim to

recover the overpayment was equitable, not legal, because "Liberty seeks reimbursement for

amounts paid to Bolton from a third-party source, the Social Security Administration. . .and

Liberty seeks a particular share of a specifically identified fund -- all overpayments resulting

from the payment of social security benefits."  *Id.*  Accordingly, the Eighth Circuit affirmed the

District Court's award of overpaid benefits to Liberty Life.  *Id.*

        The instant case involves all the same issues, and even the same claims fiduciary, as the

*Dillard*'s case.  Liberty Life seeks reimbursement of specifically identified funds that were paid

to Defendant (*i.e.* all overpaid funds resulting from Defendant's receipt of SSD).  Liberty Life

had an equitable lien established by agreement relative to those overpaid funds, based on the plan

language *and* the express agreement entered into by Defendant in July 2008.  Thus, Liberty Life

is entitled to obtain the equitable relief it has requested and to recover the overpaid funds.

        Subsequent to the *Sereboff* and *Dillard's* cases, there have been numerous Circuit Court

opinions that have honed the issue and confirmed the point.  In *Cusson v. Liberty Life Assurance*

*Company of Boston*, the First Circuit affirmed an award of overpaid benefits to Liberty Life.  592

F.3d 215 (1st Cir. 2010).  In doing so, the First Circuit compared and contrasted *Knudson* and

*Sereboff* to determine that SSD benefits paid directly to the beneficiary are recoverable by the plan, even if the plan is unable to identify the specific account into which the funds were deposited. *Id.* at 230-231. The First Circuit pointed to the language in *Sereboff* that says "the familiar rule of equity that a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets a title to the thing." *Id.* at 231. The First Circuit then emphasized that the contractual language between the plan and the beneficiary put the beneficiary on notice that she would be required to repay the plan an amount equal to what she received from the Social Security Administration, so there was nothing inequitable about enforcing the provision against the beneficiary. *Id.*

Just as in the *Cusson* case, Defendant was on notice of the requirement that he reimburse any overpayments created by receipt of SSD benefits. Even if he were not in possession of the actual Policy before he received benefits (a fact which is not established by the record), Liberty Life explained the Plan requirement for reimbursing overpayments, and provided him with the SSRA on May 6, 2008, before he began receiving benefits. LL 0772-0774. The SSRA gave Defendant a choice of having SSD benefits estimated and withheld, with any underage being paid to Defendant at the time of his SSD award, or *not* having SSD benefits estimated and withheld, with any overpayment being paid by Defendant to Liberty Life at the time of his SSD award. Defendant chose to receive the full gross benefit, and expressly agreed as follows:

> A.     If disability benefits are approved I request that Liberty Life Assurance Company of Boston (Liberty Life) pay me my benefit with <u>no reduction</u> for estimated Social Security Disability benefits until Social Security makes a decision. I understand that this may result in an overpayment of disability benefits paid to me if Social Security subsequently awards benefits to me and understand that I must repay this overpayment to Liberty Life. In consideration of Liberty Life paying me disability benefit with no reduction for estimated Social Security benefits until Social Security makes a decision, I agree to the following:

1.      I agree to apply for Social Security Benefits within 45 days of Liberty Life's written request and provide proof of such application.

2.      I agree to comply with the policy/plan provision applicable for appealing a denial, if not awarded and provided proof of such appeal.

3.      I agree to notify Liberty Life immediately if awarded Social Security Benefits

4.      If Social Security awards benefits to me, I agree that Liberty Life has a first lien on all such benefits to the extent of any overpayment or debt and agree to hold all such Social Security benefits in trust for the benefit of Liberty Life until the amount of Liberty Life's overpayment has been repaid in full.

5.      I agree to repay Liberty Life in full within the time period specified in my policy/plan provision.

LL 0767.   Defendant received this form, signed it on July 10, 2008, and returned it to Liberty Life.  LL 0767.   From this, it is irrefutable that Defendant was on notice of his obligation to reimburse Liberty Life, and he agreed to hold the funds in trust for Liberty Life to do so. However, once Defendant received benefits from both Liberty Life *and* SSA, he elected to keep it all and used baseless arguments, "gotcha" tactics, and threats of litigation to try to avoid his duty to repay Liberty Life.

ii.      *As to Count V – Breach of Fiduciary Duty*

In addition to the general claims founded in equitable lien (*i.e.* restitution, constructive trust and unjust enrichment), Liberty Life has alleged in Count V of the Complaint that Defendant is liable to Liberty Life based on a breach of fiduciary duty.   (Doc. 1).   This claim arises out of the express terms of the SSRA, wherein Defendant stated:

If Social Security awards benefits to me, I agree that Liberty Life has a first lien on all such benefits to the extent of any overpayment or debt and agree to hold all such Social Security benefits in trust for the benefit of Liberty Life until the amount of Liberty Life's overpayment has been repaid in full.

17

LL 0767.  By this agreement to "hold all Social Security benefits in trust for the benefit of

Liberty Life," Defendant became a trustee with fiduciary obligations relative to plan assets.

ERISA provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the
> responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter
> shall be personally liable to make good to such plan any losses to the plan
> resulting from each such breach, and to restore to such plan any profits of such
> fiduciary which have been made through use of assets of the plan by the fiduciary,
> and shall be subject to such other equitable or remedial relief as the court may
> deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109.  Here, the overpaid funds belonged to the plan, and Defendant only obtained

them by agreeing to establish a "first lien" and "trust" favoring Liberty Life.  By refusing to

repay the overpaid funds, Defendant violated his obligations as a trustee, and deprived the plan

of the assets he held in trust.  Accordingly, Defendant should be required to disgorge the

overpaid funds he holds in trust, or to "make good to [the] plan any losses to the plan" resulting

from his failure and refusal to do so.


    iii. *As to Defendant's First, Second and Fifth Affirmative Defenses*

    Defendant's First, Second and Fifth Affirmative Defenses all claim that Liberty Life

cannot recover the overpayments at issue because it improperly terminated Defendant's benefits

under the Plan.  These are not proper affirmative defenses, but rather they would be compulsory

counterclaims that Defendant failed to allege (or preserve).

    If, indeed, Liberty Life had improperly terminated Defendant's benefits under the Plan,

that would not invalidate Liberty Life's right to recover the overpayments at issue.  Rather, any

benefits that Defendant obtained through a counterclaim would serve to offset any

overpayments.  That is, the Court would tally the amount of benefits recoverable by Defendant

on one side of the ledger, and overpaid benefits on the other side of the ledger, and one party or the other would write a check for the difference. However, Defendant did not make a counterclaim to recover benefits in this action, such that only Liberty Life's recovery can be entered into the ledger.

Moreover, any counterclaim or affirmative defense based on the incorrectness or unreasonableness of Liberty Life's claim determination would be barred as a matter of law by Defendant's failure to exhaust his administrative remedies relative to the termination. *See Dahlmeier v. Fortis Benefits Ins. Co.*, 187 Fed. Appx. 930, 931 (11th Cir. 2006)(holding that an ERISA plan participant cannot seek benefits in court without first exhausting administrative remedies); *Perrino v. Southern Bell Tel. and Tel. Co.*, 209 F.3d 1309 (11th Cir. 2000) (strictly construing the exhaustion requirement as a prerequisite for bringing claims to court); *Counts v. American Gen. Life and Accid. Ins. Co.*, 111 F.3d 105, 108 (11th Cir. 1997)(same). If Defendant wanted to challenge the termination of his benefits, he could (and should) have done so by following the administrative process for appellate review. Had Liberty Life upheld the termination of benefits on appeal, then judicial recourse would have been available to Defendant. However, having failed to exercise his administrative appellate rights, Defendant cannot now appeal the question to this Court.

iv.     *As to Defendant's Third and Fourth Affirmative Defense*

Defendant's Third and Fourth Affirmative Defenses suggest that Liberty Life should not be permitted to recover the overpaid benefits because it fraudulently induced Defendant to sign the SSRA. However, even if this were true, it would not address Liberty Life's right of reimbursement under the Policy. The Policy clearly identifies Liberty Life's right of

reimbursement, and identifies that an award of SSD benefits (including lump sum awards) can create recoverable overpayments.  Even if the SSRA were deemed invalid, the Plan language would entitle Liberty Life to recover the overpayment, so the Third and Fourth Affirmative Defenses must fail.

Moreover, Defendant's Third and Fourth Affirmative Defenses do not really state a defense to the overpayment claim, as they do not relate to the overpayment.  These defenses say that Liberty Life told defendant, and Defendant believed, that the SSRA was necessary to his receipt of SSD benefits and would not preclude receipt of LTD benefits.  Defendant does not make any allegation in the Third Affirmative Defense which states that Liberty Life told Defendant (and Defendant believed) that he could keep SSD benefits *and* LTD benefits if they were both awarded.  So regardless of whether the allegations in the Third and Fourth Affirmative Defenses were true, they would not preclude Liberty Life's recovery of the overpayment.

Additionally, in order for Defendant to claim an estoppel based on alleged misrepresentations by Liberty Life, he must show that he reasonably relied upon those misrepresentations to his detriment.  In order to state a defense of estoppel, the party claiming estoppel must show (1) another person made a definite misrepresentation of fact to the party, (2) the party reasonably relied on that representation, and (3) the party seeking estoppel changed his position to his detriment based on the reliance on the representation. *Heckler v. Comty. Health Serv. of Crawford Cnty., Inc.,* 467 U.S. 51, 59, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984); *Zurich Am. Ins. Co. v. Frankel Enter.,* 287 Fed.Appx. 775, 779 (11th Cir.2008) (citing *Watson Clinic, LLP v. Verzosa,* 816 So.2d 832, 834 (Fla.Dist.Ct.App.2002)). When a party relies on another's misrepresentation, "that reliance must have been reasonable in that the party claiming the estoppel did not know or should it have known that its adversary's conduct was misleading."

*Heckler,* 467 U.S. at 59, 104 S.Ct. 2218. Reliance is not reasonable if the person induced to act

has access to the truth.  *Everglades Ecolodge at Big Cypress, LLC v. Seminole Tribe of Florida*,

836 F.Supp.2d1296, 1308 (S.D. Fla. 2011).  Even if Liberty Life had represented that it would

not collect the overpayment (which has not even been alleged), the content of the SSRA stated

otherwise, so Defendant could not have reasonably relied upon the statement.

     The SSRA states in very clear terms that regardless of liens and trusts to which the

Defendant agreed, he also agreed "to repay Liberty Life in full within the time period specified

in my policy/plan provision."   LL 0767.  This unambiguous statement in the SSRA made it clear

to Defendant that he was obligated to reimburse the *full* overpayment to Liberty Life, regardless

of what he thought Liberty Life told him.  Thus, it would have been unreasonable for him to sign

the SSRA containing this language in reliance on a statement by Liberty Life that he *wouldn't*

have to repay the overpayment.

     Finally, the Eleventh Circuit has recognized only a very narrow common law doctrine for

equitable estoppel in ERISA-governed cases, where (1) the relevant plan provisions are

ambiguous, and (2) a plan fiduciary has made representations to the participant that constitute an

informal interpretation of the ambiguity.  *Jones v. American General Life and Accid. Ins. Co.*,

370 F.3d 1065, 1069 (11th Cir. 2004).  This clearly would not apply to the instant case, as the

plan language relative to SSD overpayment is quite clear.  Moreover, the SSRA is a clear and

concise explanation of the plan requirements relative to overpayments created by SSD awards

and the obligations associated with repaying those overpayments.  Furthermore, the remedy of

equitable estoppel is a limited one that "is not available to [participants] in cases involving oral

amendments to or modifications of employee plans governed by ERISA."  *Kane v. Aetna Life*

*Ins.,* 893 F.2d 1283, 1285 (11th Cir. 1990) citing *Nachtwalter v. Christie*, 805 F.2d 956, 960

(11th Cir. 1986)(which emphasizes that plans must be established and maintained pursuant to "a written instrument.").

        *v.*        *The $1,801.50 Payment*:

In Defendant's letter of June 9, 2011, Defendant took the position that he considered Liberty Life's acceptance of the $1,801.50 payment as full satisfaction of any obligation he had. LL 0072.  Defendant referenced in that letter that "Our attorney has advised us at this point based on your actions [of negotiating the $1,801.50 check] this contract has been accepted and the terms we stated in our May 18, 2011 [are] agreed to as final."  LL 0072.

In essence, this was an argument that there was a novation to the insurance contract, which Defendant offered and Liberty Life accepted.  It is an argument that sufficient payment has been made, or that the $1,801.50 was an accord and satisfaction. Defendant has waived this argument (in whichever form), as he did not raise it as an affirmative defense in the pleadings. *See* Fed. R. Civ. P. 8(c) (stating that "[i]n response to a pleading, a party must affirmatively state any avoidance or affirmative defense, including:  accord and satisfaction,. . .[and] payment."). *See also Proctor v. Fluor Enterprises, Inc.*, 494 F.3d 1337, 1350 (11th Cir. 2007)("In general, a party's failure to raise an affirmative defense in the pleadings results in a waiver of the defense."); *Steger v. General Elec. Co.*, 318 F.3d  1066, 1077 (11th Cir. 2003) ("The pleading of an affirmative defense is mandated by Federal Rule of Civil Procedure 8(c) to be presented in a responsive pleading, and a party waives its right to advance an affirmative defense by failing to assert it in such.").[7] [8]

---

[7]        "Accord and satisfaction" and "payment" are defenses expressly listed in Rule 8(c).  Although novation is not a defense listed in the rule, it is an affirmative defense which must be pleaded, lest they be waived.  *See e.g. Depositors Trust Co. v. Slobusky*, 692 F.2d 205 (1st Cir. 1983) (holding that district court properly excluded evidence supporting defenses of novation, accord and satisfaction, and impairment of collateral, because such defenses were waived by omission from the pleadings.) *See also*

CONCLUSION

In light of the foregoing, Defendant should be required to reimburse the overpayment he received when he collected Plan benefits and SSD benefits for the same disability period.  Equity demands, and the precedential authority mandates, that Defendant do so.  Defendant's pleadings do not raise any legitimate basis for avoiding the repayment obligation that is clearly stated within the Plan documents, and to which Defendant expressly agreed in an unambiguous reimbursement agreement.

WHEREFORE, Liberty Life respectfully moves this Court for entry of a judgment in its favor, and against Defendant, requiring that Defendant reimburse Liberty Life the $32,660.50 in remaining overpaid benefits, to disgorge himself of those funds which he was obligated to hold in trust for Liberty Life, to pay attorneys fees pursuant to 29 U.S.C. §1132(g), to pay court costs, and to pay interest on the funds which he has wrongfully retained for more than two years from the time Liberty Life demanded the funds.

---

[8]     The referenced defenses must all fail substantively if Defendant were to seek amendment of the pleadings anyway, as Liberty Life never entered into a knowing and intentional agreement to accept $1,801.50 as full settlement of Defendant's obligation, and the $1,801.50 did not constitute "new consideration" beyond that which was already owed, such that a novation could be effected.  However, Liberty Life need not brief the substantive merits where Defendant had asserted the defenses to Liberty Life, then omitted them from the pleadings, such that Defendant knowingly waived such defenses.

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on the 28th day of May, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to: Rasheed Karim Allen, Esquire, 111 N. Magnolia Avenue, Suite 1600, Orlando, FL 32801 email: rallen@kelattorneys.com and cdonlin@kelattorneys.com.

/s  Lee W. Marcus
_____
**LEE W. MARCUS, ESQUIRE**
Florida Bar No.: 967076
Email: lmarcus@marcusmyerslaw.com
**CHRISTINA A. FARLEY, ESQUIRE**
Florida Bar No.: 91056
Email: cfarley@marcusmyerslaw.com
MARCUS & MYERS, P.A.
1515 Park Center Drive, Suite 2G
Orlando, Florida 32835
Tel:     407-447-2550
Fax:     407-447-2551
Counsel for Plaintiff,
Liberty Life Assurance Company of Boston