UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LIBERTY LIFE ASSURANCE COMPANY
OF BOSTON,

      Plaintiff,

v.                                     Case No:  6:12-cv-1320-Orl-37TBS

CARLOS DEVILLALVILLA,

      Defendant.

_____

## REPORT AND RECOMMENDATION[1]

      Pending before the Court is Plaintiff's Motion for Award of Attorney's Fees and Costs. (Doc 37).  Upon due consideration I respectfully recommend that the motion be **GRANTED in PART and DENIED in PART**.

### Background

      On August 29, 2012, Plaintiff Liberty Life Assurance Company of Boston brought this action pursuant to Section 502 of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, et seq. ("ERISA"), against Defendant Carlos Devillalvilla to recover overpayment of long-term disability benefits.  (Doc. 1).  Plaintiff filed a motion for summary judgment on May 28, 2013, to which Defendant never responded.  (Doc. 28).  I recommended that the district judge grant the motion in part and deny it in part and impose an equitable lien by agreement over the $32,660.50 in overpayment of benefits.  (Doc. 33).  On October 7, the district judge adopted my Report and Recommendations.  (Doc. 34).  The following day, the Clerk entered judgment for

---

[1] Specific written objections to this report and recommendation may be filed in accordance with 28 U.S.C. § 636, and M.D. Fla. R. 6.02, within fourteen (14) days after service of this report and recommendation.  Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings on appeal.

Plaintiff.  (Doc. 35).  Now, Plaintiff seeks to recover attorney fees and costs incurred in prosecuting this case.  (Doc. 37).

## Discussion

### A.  An Award of Attorney's Fees is Not Appropriate

Section 502(g)(1) of ERISA gives federal courts the discretion to "allow a reasonable attorney's fee and costs of the action to either party" in civil actions to enforce the provisions of ERISA or an ERISA plan.  29 U.S.C. § 1132(g)(1).  Unlike other federal statutory fee-shifting provisions, see, e.g. 28 U.S.C. § 2412; 42 U.S.C. § 1988(b), ERISA's fee-shifting provision does not entitle a "prevailing party" to a presumption in favor of awarding fees.  Byars v. Coca-Cola Co., 517 F.3d 1256, 1268 (11th Cir. 2008). In deciding whether to grant attorney fees, courts in this circuit must consider the following five factors:

> (1) the degree of the opposing parties' culpability or bad faith;
> (2) the ability of the opposing parties to satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; [and] (5) the relative merits of the parties' positions.

Freeman v. Continental Ins. Co., 996 F.2d 1116, 1119 (11th Cir. 1993).  These five factors operate "as a 'guideline[] to assist [district courts] in exercising their discretion,'" Byars, 517 F.3d at 1268 (quoting Iron Workers Local 272 v. Bowen, 624 F.2d 1255, 1266 (5th Cir. 1980) (alterations in original)) and form the "nuclei of concerns that a court should address in apply section 1132(g)." Bowen, 624 F.2d at 1266.[2]

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

Plaintiff contends that Defendant acted in bad faith in refusing to repay the benefits.  As evidence, Plaintiff points to: (1) statements Defendant made prior to the litigation; (2) Defendant's delivery to Plaintiff of a purported satisfaction check, which it characterizes as an attempt to take advantage of "a corporate entit[y']s administrative processes in receiving and cashing checks"; (3) Defendant's insistence, after Plaintiff cashed the check, that he owed Plaintiff nothing and threats to sue Plaintiff if Plaintiff pursued collection of the balance; and (4) Defendant's conduct in the litigation.  The Court does not find bad faith based upon these facts.  Plaintiff's refusal to pay could just as likely have been the product of inability to pay or confusion about his obligations.[3] Sending a satisfaction check is hardly probative of bad faith,[4] and, after Plaintiff cashed the check, Defendant's refusal to make any further payments had at least arguable legal justification.  Finally, Defendant's failure to settle or "actively stipulate to entry of a judgment" is also weak evidence of bad faith.  This factor does militate strongly for or against an award of fees.

Plaintiff argues that Defendant's attorneys are guilty of bad faith based on their filing of meritless affirmative defenses.  That an affirmative defense turns out to lack merit does not mean that counsel asserted it in bad faith.  For example, a contention asserted at the pleading stage may be undermined later-developed facts.  Likewise, counsel may

---

[3] This confusion may have stemmed partly from Plaintiff's initially sending him a copy of the Social Security Reimbursement Agreement that Defendant signed in 2010 rather than the one he signed in 2008. (Doc. 29-3, p. 13).

[4] Plaintiff speculates that Defendant failure to assert accord and satisfaction "could be construed as an effort to prevent the Court from scrutinizing the propriety and good/bad faith" of his sending the check. There is nothing "improper" about sending a satisfaction check.  The Court will not indulge in speculation when an equally plausible explanation is available–namely, a mistake on the part of Defendant's attorneys.

misjudge the merit of a particular defense.  Wielding Hanlon's razor,[5] the Court declines to infer malice from conduct that can be adequately attributed to incompetence.

Plaintiff also asks the court to infer from counsel's failure to seriously litigate the matter[6] that counsel knew that Defendant had no case, and that, upon realizing this, counsel should have terminated the representation and put an end to the litigation. Counsel's conduct is open to multiple interpretations, the most plausible of which is not hopelessness but neglect.  Therefore, I find that this factor does not weigh in favor of an award of fees.

On the second factor, the Court can only speculate about Defendant's ability to pay, and therefore agrees with Plaintiff that this factor does not point in either direction. (Doc. 37, p. 11).  As to counsel, however, this factor weighs in favor of granting an award of fees.  Counsel should not undertake representation they are not financially able to handle.  On its publicly available webpage, Kaufman, Englett and Lynn ("KEL"–the firm representing Defendant) bills itself as "a full service, national law firm practicing in 20 states across the nation" that has "more than 40 attorneys and 180 professional staff members in Tampa, Orlando, and St. Petersburg."  Kafuman, Englett and Lynd, available at http://www.kelattorneys.com/ (accessed Nov. 8, 2013).  Based on this information, the Court finds that Defendant's counsel has the ability to pay the modest fee award Plaintiff is seeking.

Plaintiff argues that a fee award would deter beneficiaries and their lawyers from groundlessly refusing to repay overpayments of benefits in the future.  There is no indication that Defendant has received further overpayments of ERISA plan benefits or is

---

[5] Cf. Heather K. Gerken, Rashomon and the Roberts Court, 68 Ohio St. L.J. 1213, 1222 (2007).
[6] As Plaintiff points out, Defendant filed only one substantive document in this case–the answer to the complaint.

likely to receive such overpayments in the future.  And, it is at best speculative that an award of benefits would have a significant effect on similarly situated beneficiaries of ERISA plans.  Accordingly, this factor does not support a fee award against Defendant. As to Defendant's counsel, this factor weighs more strongly in favor of a fee award.  KEL is a large firm, and it may well encounter clients in the future with cases similar this one. Thus, a fee award may have some deterrent effect on KEL.  Likewise, the possibility of general deterrence is more substantial, because a fee award is more likely to be noticed by the legal community than by their clients.  The third factor therefore weighs slightly in favor of an award against Defendant's counsel.

It is true that there may be some impact on plan participants from failing to award fees in cases like this one.  But those effects are too indirect for the fourth factor to weigh strongly in favor of Plaintiff.  This ERISA plan is funded by an insurance policy, rather than a trust, so attorney's fees do not come directly from the pool of funds available for payment of benefits.  Instead, the danger of not awarding fees in this is that insurance premiums for policies like the one that funded the plan might rise.  This plan is employer-financed, not employee-financed, so any increase in premiums would be borne directly by the employer, who may or may not pass some or all of those costs on to the employees. Therefore, the fourth factor does not weigh strongly in favor of an award of attorney fees.

The fifth factor does support an award of attorney's fees.  As I observed in my Report and Recommendations on Plaintiff's summary judgment motion, Defendant's positions in this litigation–to the extent Defendant actually took positions–lacked merit. (Doc. 33, p. 18).  However, I recommend the Court not award fees here, where the other factors do not significantly point in Plaintiff's favor.  The case for fees against Defendant's

counsel is slightly stronger than the case for fees against Defendant, but still not strong

enough to warrant an award.[7]

### B.  Plaintiff is Entitled to Costs

Plaintiff also seeks an award for $2,120.57 in costs incurred in connection with the

suit.  Plaintiff claims these costs under ERISA as well as Rule 54(d)(1), which provides

that costs "should be allowed to the prevailing party" unless a federal statute, the rules, or

a court order provides otherwise.[8]  Plaintiff's bill of costs (Doc. 38) identifies the following

expenses: a filing fee of $350; fee for service of process of $50; copying costs of $258.07;

and mediation expenses of $1,462.50.  Defendant has objected to none of these items,

which I recommend the Court award to Plaintiff.

### C.  Costs should be Taxed Against Defendant

Plaintiff asks for fees and costs to be assessed both against Defendant and KEL.

Rule 54(d) does not authorize taxation of costs against nonparties, including attorneys.  In

re Cardizem CD Antitrust Litigation, 481 F.3d 355, 361 (6th Cir. 2007); Wilder v. GL Bus

Lines, 258 F.3d 126, 130 (2d Cir. 2001).  Although Plaintiff has cited cases taxing fees

and costs against counsel pursuant to ERISA's fee-shifting provision, the Court doubts

that the statute contemplates such an award.  Cf. Durrett v. Jenkins Brickyard, 678 F.2d

911, 915 (11th Cir. 1982) ("[Title VII's fee shifting provision] contemplates assessments of

---

[7] Should the district judge not agree with this conclusion, I alternatively find that the claimed hourly rate of $200 for Mr. Marcus and $150 Ms. Farley are reasonable, and that the hours expended on this matter (60.8 hours for Mr. Marcus and 12.3 hours for Ms. Farley) are also reasonable.  Accordingly, should the district judge determine that an award of fees is warranted, I would recommend awarding Plaintiff $14,005 in attorney's fees.

[8] A statute "provides otherwise" if it is "contrary" to Rule 54(d)(1).  Marx v. General Revenue Corp., 133 S. Ct. 1166, 1173 (2013).  Because ERISA's fees and costs provision is not contrary to Rule 54(d), prevailing party costs may be awarded under the Rule in ERISA cases, regardless of whether application of the five-factor test also supports an award of fees and costs.  Cf. Id. at 1174 (holding that Rule 54(d)(1) costs were appropriate even though statute under which plaintiff sued provided for award of attorney fees and costs only on finding of bad faith).

attorney's fees against losing parties, not against counsel." (citing <u>Roadway Express, Inc. v. Piper</u>, 447 U.S. 752, 761 (1980))).

The Court has serious concerns about the performance of Defendant's counsel in this case.  During the litigation, Defendant has been represented by three different KEL lawyers.  The first lawyer, Philip Stiles, filed an answer to Plaintiff's complaint on November 16, 2012.  Mr. Stiles left KEL in January 2013, and on the 23rd of that month, Rasheed Allen filed a "Notice of Change of Attorney" purporting to designate Mr. Allen as Defendant's attorney "Pursuant to Florida Rule of Judicial Administration, Rule 2.516(b)(1)(A)."  (Doc. 17).  The Clerk contacted Mr. Allen to explain that this filing was not acceptable and that, to effect the substitution, he needed to refile as a notice of appearance and a motion for the previous attorney to withdraw.  (<u>See</u> notation to Doc. 17).  Mr. Allen never filed the notice and motion.  Consequently, he never received an Order this Court entered on May 10, 2013, instructing counsel for Defendant to file, within seven days, a paper stating why he failed to respond to a Rule 3.01(g) inquiry by Plaintiff's counsel regarding a proposed motion, and he failed to file the paper required by that order.  (Doc. 26).  Only after the Court ordered counsel for Defendant to show cause why he should not be sanctioned based on his failure to comply with the Court's previous order (<u>see</u> Doc. 22) did Mr. Stiles move to withdraw and Mr. Allen notice his appearance in the case.  (Docs. 23–26).

Soon thereafter, Mr. Allen apparently left KEL, and a new attorney, Richard Withers, was assigned to the case.  On June 20, Mr. Withers filed a "Notice of Changing Attorney" on the very same state-court form notice that caused the earlier problems. (Doc. 30).  This time, the Court construed the Notice as a motion to substitute Mr. Withers for Mr. Allen as counsel and granted the motion.  (Doc. 31).  As with Messrs. Stiles and

Allen, Mr. Withers appearance proved fleeting.  He filed only one other document in the case—a Motion to Withdraw dated October 21, 2013, stating that "[t]he undersigned counsel has complied with the terms of the retainer agreement for the subject property 1304 Yvonne St., Apopka, FL 32712-3846" and requesting that he and KEL be allowed to withdraw from the case.[9]  The next day, the Court denied this motion without prejudice for failing to comply with Local Rule 2.03(b), which allows withdrawal only "by written leave of Court obtained after giving ten (10) days' notice to the party or client affected thereby, and to opposing counsel."  Yesterday, Mr. Withers filed an amended motion to withdraw. (Doc. 40).

Since the answer, no KEL attorney has filed a single paper in support of Defendant's case.  Notably, KEL did not even respond to a motion asking the Court to tax fees and costs totaling approximately $16,000 against it and Defendant.  It appears that KEL may have abandoned Defendant's case in violation of the Local Rule 2.03(b) and the Florida Rules of Professional Conduct.  KEL should count itself lucky not to be facing sanctions.

### Recommendation

Upon consideration of the foregoing, I **RESPECTFULLY RECOMMEND** that Plaintiff's Motion for Fees and Costs be **GRANTED IN PART and DENIED IN PART**, and that costs in the sum of $2,120.57 be taxed in favor of Plaintiff and against Defendant Carlos Devillalvilla.

---

[9] The Court has no idea what 1304 Yvonne St., Apopka, FL has to do with this case and suspects it is a case of an attorney using a form and not reading what he was signing.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on November 12, 2013.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

Presiding United States District Judge
Counsel of Record
Any Unrepresented Parties